IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

AARON RAISER,                          :
                                       :
              Plaintiff,               :      Case No. 2:10-CV-189
                                       :
       v.                              :      JUDGE ALGENON L. MARBLEY
                                       :
CORPORATION OF THE PRESIDENT :              Magistrate Judge Norah McCann King
OF THE CHURCH OF JESUS CHRIST :
OF LATTER-DAY SAINTS, *et al.*,        :
                                       :
              Defendants.              :

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment. For the

reasons that follow, Defendants' Motion is **GRANTED**.

## I. BACKGROUND

Plaintiff Aaron Raiser ("Plaintiff") brings this action against the Corporation of the

President of the Church of Jesus Christ of Latter-Day Saints ("the Church"); Latter-Day Saints

Family Services ("LDS Family Services"); Latter-Day Saints Social Services ("LDS Social

Services"); and ten John Does (collectively, "Defendants"). Plaintiff is a resident of the State of

California and the named Defendants are Utah corporations. The Court exercises diversity

jurisdiction in this action. 28 U.S.C. § 1332.

According to the affidavit of Paul D. Rytting, a member and employee of the Church, the

Church is divided into geographical sub-units of decreasing size. *Motion*, Doc. No. 10, Exhibit

B.  "Areas," the largest sub-unit, contain smaller "Stakes," which in turn contain "Wards" or

"Branches." The Ward or Branch is the local sub-unit in which members of the Church worship.

Each of these levels of organization are presided over by a President; Wards are additionally presided over by a Bishop. Most Presidents and Bishops are lay people who serve as volunteers.

Plaintiff is an Ohio native who left the state in 1979 to attend college at Brigham Young University ("BYU) before returning to Ohio in 1986.[1] On January 12, 1989, Plaintiff's parents, with whom the Plaintiff was living, had Plaintiff committed to the Central Ohio Psychiatric Hospital ("COPH").

Plaintiff contends that his commitment occurred at the command of the Bishop of his Ward. Plaintiff's Bishop urged him to participate in several athletic activities; Plaintiff refused in a verbal confrontation with the Bishop. The Bishop then, according to the Plaintiff, ordered the Assistant Bishop (who was also the Church psychologist) to interview and evaluate the Plaintiff for signs of mental illness. The Bishop presented the information gleaned by the Assistant Bishop to the Plaintiff's father, Edward Raiser ("Mr. Raiser"), and ordered him to have the Plaintiff committed. Plaintiff alleges that the Church requires strict obedience to its leaders and that his father was therefore obligated to comply with the Bishop's command. According to the Plaintiff, the Bishop, LDS Family Services and LDS Social Services conspired to have him committed. They instructed Mr. Raiser on how to fill out his affidavit in support of his petition for his son's commitment in order to maximize the likelihood of commitment.

Plaintiff was released in March of 1989 and thereafter moved to his own apartment. Plaintiff's parents again had Plaintiff committed to the COPH in December of 1990. Defendants

---

[1]The facts alleged by the Defendants' in their Motion and its supporting affidavits largely track the facts alleged by the Plaintiff in his complaint. The Plaintiff's complaint, however, includes no dates. All of the dates cited in this Opinion are ones alleged by the Defendants and not challenged by the Plaintiff in his memorandum in opposition.

contend that, as Mr. Raiser has testified at a deposition during the litigation in Utah, Mr. Raiser and his wife initiated both of the commitments of their own accord and out of concern for the well-being of their son.

Plaintiff escaped from the COPH on June 25, 1991. Plaintiff states that he fled to Utah, where he re-enrolled at BYU and got a job as a software engineer. Plaintiff then moved to California to attend law school. Having now graduated, Plaintiff is preparing to take the bar exam.

When he re-enrolled at BYU in 1992, Plaintiff had to meet with a university psychologist and disclose his mental health history. In November of 2003, BYU, through its General Counsel, disclosed Plaintiff's mental health history in a public document. On the basis of this disclosure, Plaintiff sued the Church and BYU in the United States District Court for the District of Utah in September 2004. The district court granted the defendants' motion for summary judgment on February 7, 2006, dismissing the action in its entirety.

Plaintiff initiated this action on April 15, 2010. In his complaint, Plaintiff claims that the Bishop and the psychologist improperly disclosed confidential information regarding Plaintiff to his father, which resulted in Plaintiff's commitment to COPH. *Complaint*, Doc. No. 5. Plaintiff has alleged four claims arising from this improper disclosure and the involuntary commitment: breach of fiduciary duty against all Defendants (First Cause of Action); breach of confidence against all Defendants (Second Cause of Action); professional malpractice against LDS Family Services and LDS Social Services[2] (Third Cause of Action); and infliction of emotional distress

---

[2]Plaintiff's Third Cause of Action is based upon the psychologist's breach of his duty of confidentiality. The Court infers that the Plaintiff believes the psychologist to have been an employee of either LDS Family Services or LDS Social Services.

against all Defendants (Fourth Cause of Action). Plaintiff filed a Motion to Amend the Complaint on August 16, 2010, *Motion*, Doc. No. 22, which was granted in part and denied in part by Magistrate Judge King on November 16, 2010, *Order*, Doc. No. 39. Magistrate Judge King granted Plaintiff permission to amend his complaint to clarify that he intends to assert a claim of intentional infliction of emotional distress claim against all Defendants.

Plaintiff claims the following injuries as a result of Defendants' conduct and his commitments to COPH: physical damage caused by the medication, loss of freedom while committed, harm to his reputation, family difficulties, emotional distress, and emotional trauma.

The Defendants moved for summary judgment on June 18, 2010, contending that all of Plaintiff's claims are barred by the applicable statutes of limitations. *Motion*, Doc. No. 10. Plaintiff filed his Response on July 12, 2010. *Response*, Doc. No. 15. On July 9, 2010, the Defendants filed a Motion to Amend the Motion for Summary Judgment by deleting a footnote, *Motion*, Doc. No. 14, which was granted on July 14, 2010. *Order*, Doc. No. 16. Plaintiff responded to the Amended Motion on July 22, 2010 and July 23, 2010. *Affidavit in Opposition*, Doc. No. 19; *Response*, Doc. No. 18. The matter is now ripe for decision.

## II. STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. But the non-moving party "may not rest merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2). *See also Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When ruling on a motion for summary judgment, a district court is not required to sift through the entire record to drum up facts that might support the nonmoving party's claim. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Instead, the Court may rely on the evidence called to its attention by the parties. *Id*.

### III. LAW AND ANALYSIS

The Defendants contend that the statutes of limitations applicable to each of the Plaintiff's claims have long expired. As a threshold matter, the Court notes that "Ohio choice of law rules govern this" diversity action based on state law claims. *Toledo Museum of Art v. Ullin*, 477 F. Supp. 2d 802, 805 (N.D. Ohio 2006) (citing *Charash v. Oberlin College*, 14 F.3d 291, 296 (6th Cir. 1994)). Under those rules, the Ohio statutes of limitations control. *Id*. ("A federal court sitting in Ohio applies the procedural law of the forum state including the forum's statute of limitations even if the case requires application of another state's substantive law.") (citing *Charash*, 14 F.3d at 299).

The nature of the Plaintiff's claims, rather than the method in which he pleads them, determines which limitation period will apply. *Cundall v. U.S. Bank*, 122 Ohio St. 3d 188, 192 (Ohio 2009) ("In determining the appropriate statute of limitations for a given case, we look to the 'essential character' of the plaintiffs' claims.") (quoting *Doe v. First United Methodist Church*, 68 Ohio St.3d 531, 536 (1994)). Plaintiff has pled five types of claims: (1) emotional distress; (2) harm to his reputation; (3) professional malpractice; (4) loss of freedom; and (5) physical injuries.

First, the Plaintiff claims that he suffered emotional distress as a result of his commitment.[3] This claim is governed by either a two-year statute of limitations, Ohio Rev. Code Ann. § 2305.10(A); *Callaway v. Nu-Cor Auto. Corp.*, 166 Ohio App. 3d 56, 65 (Ohio Ct. App. 2006) (negligent infliction of emotional distress), or a four-year statute of limitations, Ohio Rev. Code Ann. § 2305.09(D); *Biro v. Hartman Funeral Home*, 107 Ohio App. 3d 508, 513 (Ohio Ct. App. 1995) (intentional infliction of emotional distress). An infliction of emotional distress claim accrues when the tort is complete, "that is, at the time the injury is incurred and the emotional impact is felt." *Id*. at 514 (injury from mishandling of plaintiff's father's remains was incurred when plaintiff learned of the mishandling rather than at the time of the mishandling); *Stewart v. Allen*, 2008 Ohio 1645, *P23 (Ohio Ct. App.2008) (an infliction of emotional distress claim

---

[3]The Parties have briefed the application of the statute of limitations to a claim for negligent or intentional infliction of emotional distress from a breach of confidence claim. The Plaintiff's complaint, however, is for emotional distress caused by the involuntary commitment. The Plaintiff's complaint reads as follows: "Plaintiff did and has suffered severe emotional distress and severe emotional trauma as a result of the physical and emotional abuse and wrongful imprisonment of Plaintiff at the mental hospital." Earlier in the complaint, Plaintiff had described in detail the trauma he experienced during his involuntary commitment; he did not allege emotional distress resulting from the breaches of confidence, and his reiteration of those breaches in his Fourth Cause of Action is best understood as an allegation of causation linking the Defendants to his commitment. The relevant focus for the emotional distress, therefore, is the time of the commitment and not the time of the breach of confidence or its discovery.

accrues when a plaintiff begins feeling the emotional impact of the injury). Any emotional distress the Plaintiff suffered from the commitment accrued at the time of the commitment in 1989, more than twenty years ago and well beyond either the two- or four-year statutes of limitations. The Court therefore **GRANTS** the Defendants' Motion with respect to this claim.

Second, the Plaintiff has claimed that he suffered harm to his reputation from the stigma of having been committed. Such harm is governed by the two-year statute of limitations and accrues "when the injury or loss to person or property occurs." Ohio Rev. Code Ann. § 2305.10(A) (2006); *see also Nadra v. Mbah*, 119 Ohio St.3d 305, 311 (Ohio 2008) (applying § 2305.10 to harm to reputation claims). Even assuming that the harm to the Plaintiff's reputation did not occur – and his cause of action did not accrue – until the Plaintiff's commitment was made public, by the Plaintiff's own admission, his commitment was publicly disclosed before he sued the Church and BYU in 2004. The latest the Plaintiff could have sued based on harm to his reputation, therefore, was sometime in 2006. The statute of limitations has long since run, and the Court **GRANTS** the Defendants' Motion with respect to this claim.

Third,  the Plaintiff had alleged that the psychologist engaged in professional malpractice. The claim is not governed by the one-year statute of limitations for medical malpractice. *Estate of Stevic v. Bio-Medical Application of Ohio, Inc.*, 121 Ohio St. 3d 488, 491 (Ohio 2009) (one-year limitation for medical malpractice in § 2305.113 only applies to providers enumerated in section E); *Thompson v. Cmty. Mental Health Ctrs.*, 71 Ohio St. 3d 194, 196 (Ohio 1994) (one-year limitation for malpractice in § 2305.11 does not apply to licensed psychologists). Rather, the claim is one not otherwise addressed and falls under the catch-all provision of § 2305.09(D) allowing four years from the time the action accrued in which to initiate a suit. The discovery rule does not apply to § 2305.09(D) claims. *Investors REIT One v. Jacobs*, 46 Ohio St. 3d 176, 181 (Ohio 1989) (discovery rule under § 2305.09 expressly limited

to claims for trespassing under ground, injury to mines, conversion, and fraud). Therefore, the Plaintiff's claim accrued at the time of the breach of confidence in 1989 and is time-barred. The Court accordingly **GRANTS** the Defendants' Motion on this count.

Fourth, the Plaintiff claims loss of freedom from the involuntary commitment. Understood as a claim for false imprisonment, the claim is subject to the one-year limitation established in Ohio Revised Code § 2305.11(A). A false imprisonment claim accrues on the date of release from confinement. *Colston v. Dep't of Rehab. & Corr.*, 2007 Ohio 1931, *P6 (Ohio Ct. Cl. 2007). Plaintiff was released from his first commitment in March of 1989 and escaped from his second commitment on June 25, 1991. As these events occurred well over one year from the filing of the Plaintiff's complaint, his claim for false imprisonment is prohibited. The Court accordingly **GRANTS** the Defendants' Motion on this count.

Fifth, the Plaintiff claims that he suffered physical injury from the forced medications during his confinement. Claims for physical injuries are governed by the two-year limitation "for bodily injury" and accrue "when the injury or loss to person occurs." Ohio Rev. Code Ann. § 2305.10(A). The discovery rule tolls the statute of limitations "[w]hen an injury does not manifest itself immediately," *O'Stricker v. Jim Walter Corp.*, 4 Ohio St. 3d 84, 90 (Ohio 1983), but only in asbestos or latent disease cases, *Combs v. Spence*, 2007 Ohio 2210, *P29 (Ohio Ct. App. 2007). A latent disease case accrues "'upon the date on which the plaintiff is informed by competent medical authority that he has been injured, or upon the date on which, by the exercise of reasonable diligence, he should have become aware that he had been injured.'" *Grimme v. Twin Valley Cmty. Local Sch. Dist. Bd. of Educ.*, 173 Ohio App. 3d 460, 463 (Ohio Ct. App. 2007) (quoting *O'Stricker*, 4 Ohio St. 3d at 90). There is no evidence in the record as to the nature of any physical injuries the Plaintiff may have suffered as a result of the medication or of

when the Plaintiff discovered (or should have discovered) their existence. The Court therefore cannot dismiss this claim as barred by the statute of limitations at this time.

Nevertheless, a party is entitled to summary judgment when there are no genuine issues as to any material facts. Fed. R. Civ. P. 56(c). In this case, the absence of evidence as to the nature of the Plaintiff's injuries warrants granting the Defendant summary judgment because injury is an essential element of the Plaintiff's claim. In a common law claim for damages based on a defendant's negligence, a plaintiff must demonstrate that defendants' breach of their duty of care to a plaintiff "proximately caused the plaintiff to be injured." *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St. 3d 120, 122 (Ohio 2009). The Plaintiff alleges that he was injured by the forced medication but not in what way, and there is no evidence in the record supporting the Plaintiff's claim. The Court therefore concludes that the Defendants' Motion on this count must be **GRANTED**.

**IV. CONCLUSION**

For the reasons set forth in this Opinion, Defendants' Motion for Summary Judgment is **GRANTED.** *Motion*, Doc. No. 10. The Plaintiff's Complaint is, accordingly, **DISMISSED**.

**IT IS SO ORDERED.**

<u>s/Algenon L. Marbley</u>
**Algenon L. Marbley**
**United States District Court Judge**

**DATED: January 28, 2011**